BUSH v. McKENZIE et al.   SAME v. FAIRBROTHER et al.   SAME v. BOARD
OF COUNTY CANVASSERS OF ULSTER COUNTY.

(Supreme Court, General Term, Third Department.   December 8, 1892.)

1. MARKED BALLOTS—OBJECTIONS AT CANVASS—EVIDENCE—MANDAMUS.

On an application by a candidate for member of assembly for a peremptory
mandamus to compel inspectors of election to reconvene, and attach to their
statement of canvass certain marked ballots, with the statement that the
counting of such ballots was objected to, and to forbid the board of county
canvassers from, in the mean time, canvassing the statements from the elec-
tion districts in question, relator's affidavit, on information and belief, al-
leged that, during the canvass of the votes by the inspectors, some of the
election officers or authorized watchers had declared his or their belief that
the ballots in question had been marked for identification.   This allegation
was controverted by the affidavits of many persons, some of them election
officers in the districts in question, and all of them in a position to have per-
sonal knowledge, who all swore positively that no inspector of election,
election officer, or watcher had declared his belief that any ballot, paster, or
paster ballot had been written on or marked for identification.   *He'd,* that
the peremptory writ would be denied, because relator had failed to show af-
firmatively that an inspector of election or other election officer or duly-au-
thorized watcher, during the canvassing of the votes, or immediately there-
after, declared his belief that the ballots objected to were marked for iden-
tification, as required by Laws 1892, c. 680, § 114.

2. SAME—BALLOTS ILLEGALLY PRESERVED—EFFECT.

The ballots in question, not having been objected to as marked for identi-
fication, should have been destroyed, as required by Laws 1892, c. 680, § 115,
and therefore, though they were preserved in violation of law. the court will
not consider them; it further appearing that they were not retained by the elec-
tion officers in their possession, but were left in public places, where stran-
gers could obtain possession of them, tamper with them, and mutilate and
mark them.

3. SAME—ALTERNATIVE MANDAMUS—PRAYER FOR PEREMPTORY·WRIT.

Since relator asked for a peremptory writ, and argued and submitted his
motion for such writ after respondent had read his opposing affidavits contro-
verting the allegations in relator's affidavit. relator cannot complain that the
court passed on his motion, instead of ordering an alternative writ on which
to determine the disputed issue of fact as to whether any objection was made
to the ballots in question as having been marked for the purpose of identi-
fication.   People v. Fairman, 91 N. Y. 387, followed.

Appeal from special term, Ulster county.

Petition by George H. Bush for a writ of peremptory mandamus
against Henry E. McKenzie and others and Robert H. Fairbrother and
others, composing the board of election inspectors of districts Nos. 1 and
2 of the town of Esopus, Ulster county, commanding said inspectors to
reconvene and attach to their statement of canvass, or to the certified
copies thereof, certain marked ballots, with the statement, as required
by law, that the counting of said ballots was objected to.   Also a peti-
tion by the same relator for a similar writ against the board of canvassers
of Ulster county.   From an order of the special term, denying the writ,
relator appeals.   Affirmed.

The following opinion was delivered by HERRICK, J., at special term:
"These are motions for writs of peremptory mandamus to the above-named de-
fendants.   The applications are made upon the affidavit of the relator, who was
a candidate for member of assembly at the recent general election.   He states
that at such election there were in the first election district of the town of Eso-
pus, in Ulster county, 15 paster ballots, pasted upon the official ballots furnished
for use at said district at said election, each and every one of which paster ballots
was marked either by the person who cast the said ballot or by some other per-

son, for the purpose of having the same identified; that said paster ballots contained the names of the candidates of the Republican party for the several offices to be voted for at said election; that upon each of such paster ballots there was pasted a paster ticket, upon which was printed the name of William Luby, a candidate for coroner. In one of the above cases he is described in the moving affidavits as the Democratic, and in the other as the Republican, candidate for coroner. It is further alleged that some of the paster tickets containing the names of said William Luby were pasted upon the paster ballots upside down, and the corner of each was cut off at a sharp angle. The same state of facts is alleged as to district No. 2, except the pasters were 11 in number, and each one is alleged to have been pasted upside down upon the paster ballots. The relator further states, upon information and belief, that during the canvass, or immediately after its completion, some of the election officers or authorized watchers declared his or their belief that such paster ballots had been marked for the purpose of identification. He also alleges that the inspectors of election, or some of them, knew and believed that such ballots had been marked for identification; but that, notwithstanding such knowledge and declarations, the said inspectors did not write on the back of such ballots the words 'Objected to because marked for identification,' or any mark in substance to that effect, and did not in any way designate said ballots, or sign their or any of their names thereto; that they did not attach any of said ballots to their statement of canvass, or to the certified copies thereof, but that they kept said ballots, and now have them in their possession. Upon that statement of facts he asks that the inspectors of election be directed to 'reconvene and attach to their statement of canvass, or to the certified copies thereof, the said marked ballots, now in the possession of them or any one of them, with the statement, as required by law, that the counting of said ballots was objected to.' And in the proceedings against the board of county canvassers it is asked that such board allow the inspectors of election to attach to their statement of canvass the marked ballots referred to, and that, in the mean time, such board be forbidden from canvassing the statements from such election districts. It will thus be seen that the question for the court to determine upon this motion is not whether the ballots were in fact marked for identification, but whether the inspectors of election should correct their statements of canvass by attaching to them the ballots that the relator claims were marked for identification. The court will only compel the inspectors to do what it was their duty to have done.

"The law provides as follows: 'When an inspector of election or other election officer or duly-authorized watcher shall, during a canvass of the votes, or immediately after the completion thereof, declare his belief that any particular ballot, paster, or paster ballot affixed thereto has been written upon or marked in any way for the purpose of identification, the inspectors or canvassers shall write on the back of such ballot the words "Objected, to because marked for identification," or words in substance to that effect, and sign their names thereto, and attach each such ballot to their written statement of the result of the canvass.' Section 114, c. 680, Laws 1892. The first thing to be done, then, to authorize the inspectors to attach the ballots to the statement of result is that some election officer or watcher shall declare his belief that the ballot has been marked for identification. Unless that is done, they are neither authorized nor required to attach such ballots to the statement. It was held in People v. Shaw, 133 N. Y. 493, 31 N. E. Rep. 512, that, where the objection was not taken before the board of town canvassers that the ballots were marked for identification, the court could not consider that objection afterwards. That was a case where upon a paster ballot for town officers there was also printed the name of the office of excise commissioner and of the candidate therefor. The objection was made that they were defective, 'in that they contained the name of an office and a candidate therefor that was not upon the official ballots, and could not be properly on the same ticket with the other town officers.' Subsequently it was claimed that they were marked ballots, but the court held that that question was not before it. The relator says he is informed and believes that such objection, or rather expression of belief, was made, and his allegation upon information and belief is all that appears before me to show that such necessary objection was made.

"On the part of the defendants there is presented as to district No. 1 the affidavits of one of the inspectors, two watchers, a poll clerk and a ballot clerk, and as to district No. 2 the affidavits of one inspector, two poll clerks, one ballot clerk, and a watcher, all swearing positively that they were present during the canvass of the votes polled in their respective districts, and that no inspector of election,

election officer, or watcher declared his belief that any ballot or paster or paster ballot had been written upon or marked for identification; and they also swear that no ballots were marked with the words 'Objected to because marked for identification,' or words in substance to that effect. Under such circumstances, where there is on the one side but a single affidavit, and that upon information and belief, and opposed to it that of so many persons, who were in a position to have personal knowledge, and who swear positively to the contrary, I am compelled to hold that, as a matter of fact, no objections were made at the time of the canvass of the votes, or immediately thereafter, that such ballots were marked for identification. But counsel for the relator says that the object of the statute was to have the ballots preserved for the court to act upon, and that, as the ballots have been in fact preserved, its object has been accomplished, although in an irregular manner; that the law should be liberally construed. The law should be liberally construed to effect its purposes; among other things, to promote honest elections, and an honest declaration of the result. To sanction a practice such as is contended for here would, it seems to me, open the door to fraud and sharp practice, instead of promoting an honest declaration of the result. The ballots, it appears, have been preserved. They have been preserved in violation of law. Having been voted, and no objection having been made to them as marked for identification, they should have been destroyed. Section 115, c. 680, Laws 1892. In providing for the preservation of ballots challenged as marked for identification, the law has provided certain safeguards to identify the ballots, and prevent imposition and fraud. In addition to having written upon them the words heretofore mentioned, it also requires that each inspector shall sign his name thereto. The purpose of this is obvious. None of these safeguards appear in this case. The ballots were preserved, but how? They were, as appears from the affidavits, left in public places, apparently in the buildings where the elections were held in the respective districts. The inspectors did not keep them in their personal possession. The danger of such action is obvious. Strangers could obtain possession of them, tamper with them, mutilate or mark them. Ballots not objected to at the time of being canvassed, preserved in violation of law, out of the possession of the officers, exposed to the dangers I have suggested, I do not think should now be attached to the statement of the canvass. A construction of the law that would permit it would be lax, not liberal. It would invite sharp practice. I do not mean to intimate that there has been any in this case, but, if the procedure contended for is sanctioned now, it invites sharp practice and tampering with the ballots hereafter. In fact, the only inspector sworn from district No. 2 swears that no such ballots as above described were voted in his district.

"It appears that, since the proceedings were commenced, the chairman of the board of inspectors in each of said districts, by permission of the board of canvassers, attached to the statement of canvass theretofore filed with the board ballots of the kind in question, alleged to have been marked for identification, and indorsed thereon, in substance, that they 'were returned as objected to because marked for identification.' There had been no meeting of the several boards of inspectors authorizing any such action to be taken, and it appears to have been the individual action of the chairman. As we have seen, the affidavits show that the ballots were not marked during the canvass, or immediately thereafter, as objected to because marked for identification, or with that in substance. That was the only time when such action could be legally taken. The proceeding was wrong. There is no authority in law for it. A single inspector cannot act for the whole board, and, under the facts as they now appear, the board itself would have no right to do what a single member of it has assumed to do. The alleged marked ballots so attached to the statements of result since they were originally filed must be removed from such statements before being canvassed by the board of canvassers. The several motions must be denied, with $10 costs in each proceeding. Let orders be entered accordingly."

Argued before MAYHAM, P. J., and PUTNAM, J.

Linson & Van Buren, (J. Newton Fiero, of counsel,) for relator.

John J. Cloonan, for board of canvassers.

G. D. B. Hasbrouck, Charles F. Cantine, and Severyn B. Sharpe, for defendants.

PUTNAM, J.   The order should be affirmed, on the opinion of the court below.   The relator was not entitled to alternative writ of mandamus.   People v. Fairman, 91 N. Y. 387.[1]   Order affirmed, with $10 costs and printing.

MAYHAM, P. J.   I concur with the conclusion of the learned judge at special term that a peremptory writ of mandamus should not issue in these cases, because it does not affirmatively appear that an inspector of election or other election officer or duly-authorized watcher, during the canvassing of the votes, or immediately after the completion thereof, declared his belief that the ballots objected to on this motion were marked for the purpose of identification, as required by section 31 of chapter 262 of the Laws of 1890, as amended by chapter 296 of the Laws of 1891.[2]   It is only when such objection is made that this summary pro-

---

[1] In this case the court said: "The relator cannot now complain that the court passed upon the motion for a peremptory writ, instead of awarding an alternative writ.   The motion was for a peremptory writ, and it does not appear that any application was made for an alternative writ; but, on the contrary, that after the respondent had read affidavits in justification of his own action, and controverting the allegations of the relator, the latter, without introducing any further papers, proceeded to argue and submit his motion for a peremptory writ on the papers then before the court, in the face of the rule declared in People v. Supervisors, 73 N. Y 173, that such a course is equivalent to a demurrer to the facts set up by the respondent." The rule is well stated in the syllabus to be that, after such conduct, "he cannot complain if the court pass upon the motion, instead of ordering an alternative writ."

[2] Laws 1890, c. 262, § 31, as amended by Laws 1891, c. 296, reads as follows: "When an inspector of election or other election officer or duly-authorized watcher shall, during a canvass of the votes, or immediately after the completion thereof, declare his belief that any particular ballot or paster affixed thereto has been written upon or marked in any way, with the intent that the same may be identified, the inspectors shall write their names on the back thereof, and attach it to the original certificate of canvass, and include in said certificate a statement of the specific grounds upon which the validity of such ballot is questioned. When the votes are to be estimated, and the result declared, by a board of county canvassers or other officers performing similar duties, such board or officers shall mention separately in the statement or certificate of canvass the number of votes thus questioned which were cast for each candidate, and the specific grounds upon which the same are claimed to be invalid, as set forth in the original certificate of canvass.   Such ballots shall be counted in estimating the result of an election, but, within 30 days after the filing of the certificate declaring such result, a writ of mandamus may issue out of the supreme court against the board of canvassers, or officers acting as such board, by whom the ballots were counted, upon the application of any candidate voted for at the election, to require a recount of the votes; and all questions relating to the validity of such ballots, and as to whether they were properly counted, shall be determined in such proceedings.   All such ballots shall be preserved for at least one year, and until the questions raised by such writ shall be finally determined.   Election boards and boards of canvassers shall be continued in existence for the purposes of such proceedings." Section 35 of the same act provides: "No voter shall place any mark upon his ballot, or do any other act in connection with a ballot, with the intent that it may be identified as the one voted by him.   No person shall place any mark upon, or do any other act in connection with, a paster ballot, with the intent that it may afterwards be identified as having been voted by any particular person.   When a ballot has been deposited in a ballot box, upon which or upon a paster affixed thereto a writing or mark of any kind has been placed by the voter or by any other person to his knowledge, with the intent that such ballot shall afterwards be identified as the one voted by him, the same shall be void and of no effect."

ceeding can be adopted; but the failure to make such objection, and thus lay the foundation for this summary proceeding, does not render a ballot marked for identification a valid vote, but the statute makes such ballot absolutely void, and no neglect on the part of the inspectors or watchers should be permitted to give validity to a vote denounced by the law as void. In this case it is positively asserted that these ballots were marked, but the respondent disputes their validity, and denies positively that they were objected to at the time of the canvass. Here is a sufficient dispute as to the facts to authorize the issuance of an alternative mandamus, if a motion for an alternative writ had been made. In People v. Board Sup'rs, etc., (N. Y. App.) 32 N. E. Rep. 242, Earl, C. J., says:

"A candidate intending to proceed by mandamus under section 31 should procure an alternative writ, so that, if there should be any dispute about the facts, that can be settled before the peremptory mandamus issue."

I think in this case an alternative writ, if applied for, should have issued, so that the facts in dispute, to wit, whether objection was made, or, if not made, whether the marked ballots were voted, and, if voted, whether they were marked for the purpose of identification, could be settled. But the relator in this case cannot have that relief on this motion, as the argument of the questions involved on the conflicting affidavits is in the nature of a demurrer to the legal sufficiency of the opposing proof, (People v. Fairman, 91 N. Y. 387;) and, when that is done, the alternative writ will not issue.